*In re* VAN KOOY'S ESTATE.

TYLER *v.* GEERLINGS.

1. TRUSTS—NEGLIGENCE OR VIOLATION OF TRUSTEE'S DUTY.

In determining whether a trustee is guilty of any negligence or violation of his trust duties, the court is governed by the circumstances of the case.

2. SAME—INTEREST—SAVINGS ACCOUNTS—BAD FAITH—NEGLIGENCE —EVIDENCE.

Successor trustee under testamentary trust *held*, not liable to beneficiary for interest on $16,018.01 left in savings account of bank in which it and other funds had been placed by testatrix where bank was closed pursuant to governor's bank holiday proclamation and although trustee had been a bookkeeper in the commercial department of the bank for many years, was mayor of the town and member of the board of education whose moneys were on deposit there and he did not withdraw such funds or his own on deposit there even though 90-day by-law as to savings deposits was imposed and record does not show he acted in bad faith or was negligent.

3. APPEAL AND ERROR—TRUSTS—ALLOWANCE FOR SERVICES—INTEREST.

Upon remand of case to trial court for allowance of trustee's account as presented in which he was not charged with interest on savings account in bank which was closed during his trusteeship, amount of allowance for trustee's services is left to discretion of trial court in view of reversal of its previous determination of trustee's liability for interest and allowance of $50 for services.

Appeal from Ottawa; Miles (Fred T.), J. Submitted April 15, 1938. (Docket No. 107, Calendar No. 40,030.) Decided June 6, 1938.

In the matter of the estate of Hendrika Van Kooy, deceased. Henry Geerlings, trustee, presented for allowance his first annual account. Arthur E. Tyler, holder of a life interest, objected thereto. From order of probate court, trustee appealed to circuit court. From judgment of circuit court, Tyler appeals and trustee cross-appeals. Reversed and remanded.

*J. Thomas Mahan*, for appellant Tyler.

*Allaben & Wiarda*, for cross-appellant trustee.

BUSHNELL, J. Mrs. Hendrika Van Kooy, by her last will and testament, gave to her friend, Arthur E. Tyler, a life use of her home and other property on certain conditions, and the life income of the residue of her estate. She died on January 12, 1929, and the First State Bank, of Holland, Michigan, was appointed as her administrator, with will annexed.

On January 30, 1930, the administrator obtained an order assigning the residue of Mrs. Van Kooy's estate to itself as trustee. Having been advised by the State banking department that it did not have the power to act as trustee, the bank filed its withdrawal and defendant Henry Geerlings was appointed as successor trustee, qualifying as such in May of 1932.

Geerlings had been in the employ of the bank for 44 years and was then acting in the capacity of bookkeeper in the commercial department. He had never been a director or officer of the bank, although at one time he had been a stockholder. He had been a member of the board of education and library board of the city of Holland, and was at the time mayor of the city. When Geerlings became trustee there was on deposit in the savings department of the First State

Bank, to the credit of the Van Kooy estate, the sum of $16,018.01. Tyler had been receiving the income from the estate consisting largely of 4 per cent. semi-annual interest on the deposited funds. Because of financial disturbances in the community and the closing of another bank, a run developed on the First State Bank and, on February 4, 1933, its directors invoked the 90-day withdrawal clause of the bank's by-laws. Then followed the Governor's proclamation which closed all the banks in the State. The bank was later reorganized and reopened; 50 per cent. of each depositor's account was made available in the form of 10 per cent. cash and time certificates; the remainder of each deposit, evidenced by trust participation certificates, was set aside to be paid as the bank's segregated assets were liquidated.

Geerlings filed an account as trustee July 11, 1935, in which he reported the situation, as it then existed, to the probate court. Tyler, the life beneficiary, objected to the allowance of Geerlings' account and sought to hold him liable for the loss of income Tyler claimed to have suffered because Geerlings permitted the trust money to remain on deposit in the savings department of the bank. The probate judge, in the order allowing the account, charged the trustee with interest on the entire savings deposit at the rate of 5 per cent. from March 3, 1933, and, in addition, with the sum of $8,060.03, that being the amount of the impounded funds. Geerlings took an appeal from this order to the circuit court. While this appeal was pending, Tyler, the life beneficiary, and George D. Albers, assignee and purchaser of the interest of Peter Hendrik Oldemans, remainderman under the will, entered into an agreement regarding the disposition and division of the trust fund, the real property, and the life estate, whereby Albers became the

owner of the participation certificates. By agreement between the parties, a petition was filed in the probate court and an order was entered authorizing distribution of the assets of the estate in accordance with the agreement. This narrowed the questions involved in the probate appeal to the sole question of whether or not Geerlings should be charged with interest on the savings account balance and, if so, at what rate. At the conclusion of the testimony the circuit judge announced that Geerlings was to be charged with interest at the "postal savings rate" from March 4, 1933, and that he would be given an allowance for his fees and expenses.

A judgment was entered against Geerlings in the sum of $656.83, which figure was reached after crediting the trustee with $50 for his services, and charging him with some interest that had been earned.

In denying a motion for new trial, the court said:

"The trustee makes 12 objections to the judgment as rendered, they may be summed up in the idea that the court should have relieved him from all obligation, and given him a premium for neglecting to do anything to protect the funds in his hands.

"It is my opinion that both positions are untenable. The trustee was bookkeeper of the bank; he cannot be heard to say he did not know its condition. Clearly he should have withdrawn the money from such institution. He cannot escape liability for not doing it.

"But had he withdrawn the funds, what could he have done with them in the latter part of '32 or the early part of '33? If he had hired a safety deposit box and 'hid his lord's money' it would have drawn no interest; he would have been doing just what many people of prudence did do. I should not have said he was negligent in so doing. But instead, I hold

that he not only should have withdrawn the money, but should have invested it safely in postal savings, at 2 per cent. That he should have done that much, and that he should be allowed $50 for the services. As the decision of this court was vastly different from the decision in probate court, costs were allowed him.

"Under the circumstances it is the view of this court on mature deliberation that equitable conclusion was reached on the trial of this case."

Tyler has appealed from this judgment claiming that the interest should have been computed at 5 per cent. and that no compensation should have been allowed the trustee. The trustee filed a cross-appeal, in which he claims in his reasons and grounds for cross-appeal that the court was in error in entering judgment against him in any sum whatsoever, and that the court erred in the allowance of fees and expenses.

There is nothing in the record to indicate where the trial judge obtained his standard of 2 per cent. other than the statement that this is the rate of interest allowed on postal savings accounts. Observations were made upon oral argument before us that perhaps the trustee could not have deposited the trust funds in a postal savings account because the maximum deposit, allowed by the United States statutes, to be made in the name of any one person, is the sum of $2,500. See Act of June 25, 1910, chap. 386, § 7 (36 Stat. at L. 815, 39 USCA, § 756); and Act of July 2, 1918, chap. 117, §§ 12, 13 (40 Stat. at L. 754, 39 USCA, § 756).

Moreover, Geerlings may not be charged with interest on the savings account unless he was negligent or otherwise committed a breach of his fiduciary duties with respect thereto.

In determining whether Geerlings was guilty of any negligence or violation of his trust duties, we must be governed by the circumstances of the case. *Lawrence* v. *First National Bank & Trust Company of Kalamazoo,* 266 Mich. 199. The record does not indicate any bad faith on the part of Geerlings. When he was appointed trustee he was aware of the difficulties involved in the investment of trust funds and had every reason to believe that they were safe in the savings department of the bank with which he had been connected so many years, and that they would continue to earn 4 per cent. for the beneficiary. The moneys of the board of education, of which he was a member, were on deposit in the bank, as were his own personal funds. He did not withdraw or urge the withdrawal of any of these moneys. He had nothing to do with the imposition of the 90-day provision of the bank's savings department's by-laws, and apparently believed that the depositary could withstand any run.

Nor is there any evidence of negligence on his part. The deposit was not made by him but by the testatrix. Her confidence in the bank as a place for the safe-keeping of her funds is indicated by some of the provisions of her will. She provided therein for a trust fund of $100 to be placed in the First State Bank, of Holland, the principal and income of which were to be used for the care of the graves of herself and of her deceased husband. She also provided that, in the event Tyler should vacate the home, her executor was to sell the household effects "and deposit the net proceeds thereof in the savings account of the First State Bank of Holland, Michigan, or invest same in some other safe securities so as to preserve same for my estate, and rent said building to other parties."

Geerlings was only a commercial department bookkeeper in the bank and had no actual or constructive knowledge that would warn him that the bank was to be closed by the Governor's proclamation. It should be particularly noted that the bank did not close because of any unsoundness in its own condition but merely because it was included in the general banking holiday.

Appellant Tyler urges the application of the rule stated in *Re Culhane's Estate,* 269 Mich. 68. The facts in that case are not similar to those in the instant appeal. In the *Culhane Case* the directors of the Pontiac Trust Company, administrator of the Culhane estate, were also directors of the Pontiac Commercial & Savings Bank in which some of the funds of the estate were deposited. The stockholders of the two institutions were identical and the trust company and the bank occupied adjoining quarters. The court said:

"Through its officers and directors this trust company was in a position different from that of most corporate or personal trustees. It was in close touch with business and banking conditions and had a special knowledge of the status of its depository bank; one might almost say daily and continuous knowledge."

We have not expressed our opinion upon the court's determination of an allowance of $50 for the trustee's services because that allowance was coupled with the trial court's erroneous determination that Geerlings was liable for interest. The amount of such allowance should rest in the sound discretion of the trial judge, who may make a different allowance if he sees fit so to do.

The judgment of the circuit court is reversed and the cause remanded for entry of an order allowing Geerlings' account as presented, and granting to him his costs and a reasonable allowance for his services as trustee.

WIEST, C. J., and BUTZEL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.